UNITED STATES DISTRICT COURT                         b

RECEIVED
USDC, WESTERN DISTRICT OF LA  WESTERN DISTRICT OF LOUISIANA
TONY R. MOORE, CLERK
DATE  1/30/15  wt      ALEXANDRIA DIVISION

POLANSKI O. WARREN, SR.,          CIVIL ACTION
        Plaintiff                 SECTION "P"
                                  NO. 1:13-CV-01257
VERSUS

LANCE MOORE, et al.,              JUDGE DEE D. DRELL
        Defendants               MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Polanski O. Warren ("Warren") on May 20, 2013 (Doc. 1) and amended on November 6, 2012 (Doc. 15). The named defendants are Lance Moore ("Moore")(warden of the Concordia Parish Correctional Facility ("CPCF"), George Byrnes ("Byrnes") (chief of security at the CPCF), Sheila Spinner ("Spinner")(an administrative assistant at CPCF), and Deborah Cowan ("Cowan")(an LPN employed as nurse administrator at CPCF) (Docs. 1, 37). Warren alleges that, while he was incarcerated in the CPCF from January 16, 2013 through June 24, 2013, he was denied medical care for a torn meniscus in his left knee and dental care (Doc. 1). Warren alleges that he brought his medical problems to the attention of each of the defendants (Doc. 15). For relief, Warren asks for monetary damages (Doc. 1). Warren is not presently incarcerated (Doc. 41).

Warren alleges he injured his knee twice before he was

incarcerated, was seeing a doctor for the injury, was told he needed surgery and was referred to an orthopedist, but was incarcerated before his appointment with the orthopedist (Doc. 15). Warren contends he has an injury to a nerve, injuries to a tendon and ligament, damage to his bone structure, and extreme pain (Doc. 15). Warren alleges that CPCF sent him to LSU Medical Center emergency room on March 6, 2013, where he was given an injection for his knee and an immobilizer and was told that the emergency room did not handle his type of injury (Doc. 1). Warren further alleges that, after several more weeks of constant pain, he was sent back to the emergency room, where he was again told that his type of injury was not handled in the emergency room and he needed to see an orthopedic specialist (Doc. 1). Warren contends that, on April 16, 2013, he was sent to another department at LSU Medical Center, where he saw another doctor who was not an orthopedic specialist; that doctor prescribed pain medication and told Warren he needed to see an orthopedic specialist soon and begin physical therapy (Doc. 1). Warren contends that CPCF never sent him to see an orthopedic specialist or a physical therapist, he has run out of pain medication, and he has not been returned to see the doctor who prescribed the pain medication (Doc. 1). Warren also alleges that he was given the wrong medication on February 23, 2013 by the pill officer (Doc. 1).

Warren further alleges that he has never been provided dental

care for a tooth that needs to be pulled and another tooth that needs a filling (Doc. 15). Warren alleges that he saw a dentist, but the dentist was unable to numb Warren's tooth enough to pull it and did not fill the other tooth (Doc. 15). Warren contends he was told he was scheduled for another dental appointment, but was transferred to Elayn Hunt Correctional Center on June 24, 2013, before that appointment (Doc. 15). Warren contends that, due to the delay in his dental work, he suffered excruciating pain, swelling in his jaw, and headaches, and was unable to eat properly so he lost weight (Doc. 15).

Defendants answered the complaint (Doc.25) and filed a motion for summary judgment (Doc. 25). Warren responded to defendants' motion (Doc. 39), and defendants replied (Doc. 40). Defendants' motion is now before the court for disposition.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the

motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap,

4

862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Medical Care

Defendants contend in their motion for summary judgment that Warren was provided medical care while he was at CPCF and that his complaints amount to nothing more than dissatisfaction with the type of medical care he received.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).  A prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities.  Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994).

The Supreme Court defined "deliberate indifference" as

"subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer, 511 U.S. 825, 114 S.Ct. at 1980.  Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition.  Estelle, 97 S.Ct. at 291.  Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs.  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).  Inmates are entitled to reasonable medical care, not to the best medical care that money can buy.  Mayweather v. Foti, 953 F.2d 91 (5th Cir. 1992).  See Hickman v. Moya, 181 F.3d 97 (5th Cir. 1999)(doctor's refusal to send plaintiff to a specialist was a disagreement over medical care or, at most, negligence).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care.  Walker

v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

In the case at bar, Warren argues that defendants did not immediately provide him with medical care for his knee and dental problems, and did not provide appropriate medical care by taking him to the types of doctors who could provide him treatment. Since Warren's medical problems pre-existed his incarceration (Doc. 15), and he was incarcerated at CPCF for about six months, Warren alleges he suffered knee and tooth pain due to defendants' failure to provide appropriate medical care at CPCF for about six months.

Defendants submitted an affidavit by Deborah Cowan, the nurse administrator at CPCF (Doc. 37, Ex.), who states that, while Warren was incarcerated at CPCF between January 16, 2013 and June 24, 2013, she spoke to him two to three times per week. Cowan states in her affidavit that, upon his arrival at CPCF, Warren was placed on a waiting list to see an orthopedist at Huey P. Long Hospital but that Warren's appointment was cancelled by Huey P. Long Hospital when it no longer employed an orthopedist; Warren was then placed on the waiting list at LSU Medical Center in Shreveport, but Warren was transferred from CPCF on June 24, 2013 before he could go to that appointment (Doc. 37, Ex.). Cowan states that, although LSU Medical Center did not definitely diagnose Warren with a torn meniscus, Warren was referred to physical therapy one week before he was transferred out of CPCF, so Warren never began his physical

therapy (Doc. 37, Ex.). Cowan further states that Warren's doctors never definitely diagnosed him with a torn meniscus while he was incarcerated at CPCF (Doc. 37, Ex.).

Cowan also states in her affidavit that, when Warren arrived at CPCF, he was placed on a waiting list for outside dental care and was taken to his dental appointment, but Warren refused to allow the dentist to pull his tooth and asked to be taken to a different dentist (Doc. 37, Ex.). Cowan contends Warren was transferred out of CPCF before he could be taken to another dentist (Doc. 37, Ex.). Cowan states in her affidavit that, during his six months incarceration at CPCF, Warren was examined or treated by medical doctors at least seven different times, taken to a dentist, provided a knee brace, and provided all of the medications he was prescribed, and that the CPCF staff obeyed all of the medical orders given by Warren's doctors (Doc. 37, Ex.).

Defendants also submitted Warren's medical records from CPCF (Doc. 28). Warren's medical records show that Warren told the staff at CPCF about his torn meniscus and cracked tooth when he arrived at CPCF, and also show that Warren had prescriptions for Etodolac, Ultram, and Flexeril, had a no climbing/no lifting status with a bottom bunk pass, and his name was placed on the dental waiting list (Doc. 28, p. 2/15). Warren's medical records show that, on January 28, 2013 and February 15, 2013, Warren complained that his knee was swollen and painful, so his evaluation was faxed

to Huey P. Long Hospital for a possible referral for an orthopedic evaluation (Doc. 28, p. 4/15).  Warren's medical records further show that, on February 19, 2013, it was noted that Warren had a broken tooth and was on the dental waiting list (Doc. 28, p. 5/15).

On February 25, 2013, Warren complained that he had not been to the hospital for his knee, and he was told that faxes had twice been sent to Huey P. Long Hospital, a phone call had been made to Huey P. Long Hospital concerning his appointment, and he had been ordered transported to the LSU Medical Center emergency room in Shreveport for evaluation and possible treatment (Doc. 28, p. 5/15).  Warren's medical record dated January 26, 2013 noted that Warren complained he had been given a Protonix the previous night which had not been prescribed for Warren (Doc. 28, p. 5/15).

On March 6, 2013, Warren was taken to the LSU Medical Center emergency room in Shreveport, where he was prescribed Ultram, a knee brace for two weeks, and ibuprofen; it was noted that Warren had a possible torn meniscus and needed to follow up with primary care at LSU Medical Center (Doc. 28, p. 6/15).  On March 8, 2013, complained at CPCF that the doctor at LSU Medical Center had prescribed him the same pain medication he had already been taking, which did not work any more; Warren was told the doctor at LSU had not wanted to prescribe a narcotic and advised Warren to try the knee immobilizer together with Ultram to see if that combination worked (Doc. 28, p. 6/15)

9

Warren's medical record dated March 11, 2013 shows that Warren complained of re-injuring his knee, which was swollen and painful, and claimed the medical officer had given him the wrong medication; it was verified that Warren was receiving the correct medication and that he had been placed in lockdown, so there was no change in Warren status for wearing the immobilizer and elevating his leg (Doc. 28, p. 6/15).

On March 13, 2013, Warren reported to the infirmary that he was planning to file a Section 1983 action concerning denial of medical care (Doc. 27, p. 8/15).  On March 14, 2013, Warren was seen by a CPCF doctor, who noted that Warren was wearing his knee brace but continued to have pain and discomfort with minimal swelling that day; Warren was referred to the LSUS orthopedic clinic, was prescribed Diclofenac, Robaxin, and Fioricet, and his previous prescriptions for Ultram, Flexeril, and Etolodac were discontinued (Doc. 28, p. 7/15).  The LSUS orthopedic clinic was contacted for an appointment (Doc. 28, p. 7/15).

On April 4, 2013, Warren complained that the medication he had been prescribed did not work and his knee was swollen and painful; Warren also stated that a white inmate, who arrived at CPCF after Warren, was getting better medical care, and complained of racial discrimination and malpractice (Doc. 28, p. 8/15).

On April 17, 2014 it was noted that Warren had an appointment at LSU-Shreveport in the rehab clinic, and that Huey P. Long

10

Hospital had called and prescribed Oxycodone, but cancelled the orthopedic appointment because it no longer had an orthopedist (Doc. 18, p. 9/15).  On April 18, 2013, Warren's CPCF medical records show he was taken to court, then sent to another facility, so his physical therapy appointment had to be cancelled (Doc. 28, p. 9/15).

On April 24, 2013, CPCF received Warren's medical records from Bogalusa Medical Center, which showed that, on April 25, 2012, Warren had lateral tilting of the patella and a questionable tear of the body of the medial meniscus (Doc. 28, p. 10/15).

On May 23, 2013, Warren went to the dentist, but his tooth was not extracted due to an abscess and he was prescribed medication to take for a week (Doc. 28, p. 10/15).  Warren also complained of serious knee pain, was told an appointment had already been made for him, and it was noted that he was ambulating without his knee brace and without difficulty or grimacing (Doc. 28, p. 11/15).  On May 28, 2013, Warren again asked for pain medication and an orthopedic specialist, and was told he had an appointment with physical therapy and that the doctors had not recommended that he see a specialist (Doc. 28, p. 11/15).

Warren returned to the dentist on May 28, 2013, stated that the dentist was unable to pull his tooth because he was unable to numb it enough to pull it (Doc. 28, p. 11/15).  However, the transportation officers stated the dentist gave Warren four shots,

11

but Warren would not allow the dentist to attempt to pull his tooth; Warren kept pulling away before the dentist could get inside of his mouth and would not open his mouth, so the dentist gave up (Doc. 28, p. 11/15).

On June 3, 2013, Warren again complained of pain and was told that his medical orders were being fulfilled by CPCF staff, that he was being given the medication his doctors had ordered, that he had an appointment for physical therapy followup, and that a request for his transfer to another facility had been made (Doc. 28, p. 12/15). On June 5, 2013, Warren complained of knee pain and was told he was not supposed to be wearing his knee brace anymore; Warren said he would "fall down" if he did not have his knee brace, then asked for Oxycontin and was told he had taken all of it and would not receive another prescription for it because it is a narcotic (Doc. 28, p. 12/15).

On June 7, 2013, Warren complained that he no longer had an immobilizer and his knee was swollen and painful (Doc. 28, p. 12/15). The nurse noted that Warren's knee had a small amount of puffiness but was unchanged from the day before yesterday, advised Warren of his pending LSU-Shreveport appointment, and called Elayn Hunt Correctional Center to check on the status of Warren's transfer request (Doc. 28, p. 12/15). On June 10, 2013, Warren complained again about his cracked tooth and asked that he be transferred to Elayn Hunt Correctional Center that day (Doc. 28, p.

12

13/15).

Warren went to LSU-Shreveport on June 11, 2013, and received a diagnosis of injury of knee, leg, ankle and foot, all of his medications were discontinued, he was given exercises to do, and he was given follow-up and physical therapy appointments (Doc. 28, p. 13/15).  On June 13, 2013, Warren complained of knee pain and asked to be taken to the doctor (Doc. 28, p. 13/15).  On June 18, 2013, Warren went to LSU-S, an MRI was ordered, he was prescribed Tramadol, and the physical therapist saw him and cancelled his future appointments, stating that Warren needed orthopedic intervention instead (Doc. 28, p. 14/15).

It is clear that defendants provided Warren with reasonable medical care while he was incarcerated at CPCF.  Warren was never sent to an orthopedic specialist because his appointment with an orthopedist at Huey P. Long Hospital was cancelled, and Warren was unable to get an appointment with an orthopetist at LSU-Shreveport before he was transferred out of CPCF.  Warren was not denied medical care; he simply did not receive the specialist appointments and narcotics that he asked for.  Moreover, Warren was provided with a dental appointment and his abscess was treated; Warren's refusal to allow the dentist to work inside his mouth was Warren's choice and not attributable to any of the defendants.  Warren's complaints appear to be with his doctors, rather than the defendants at CPCF, as to the medications and treatments the

13

doctors prescribed for him and the fact that he was unable to get an appointment with an orthopedist at LSU-Shreveport.

Since Warren's allegations amount to nothing more than a disagreement with his *doctors* about the type of medical care he should be receiving, Warren has not shown that the *defendants* violated his constitutional right to medical care by denying or delaying his medical care.   Therefore, defendants' motion for summary judgment (Doc. 37) should be granted and Warren's action should be dismissed.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 37) be GRANTED and that Warren's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs etc.) may be filed.   Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.   Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of January 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE